## INTELLECTUAL PROPERTY

COPYRIGHTS – ADMINISTRATIVE LAW – RULEMAKING –
    LEGALITY OF INCORPORATING BY REFERENCE A
    COPYRIGHTED WORK INTO A REGULATION

November 28, 1994

*Mr. Robert J. Colborn*
*Administrator*
*Division of State Documents*
*Office of the Secretary of State*

You have requested our opinion whether the Code of Maryland Regulations and its temporary supplement, the *Maryland Register*, may incorporate by reference copyrighted works without the consent of the copyright owner. Incorporation by reference is a procedure by which one document is made part of another document by referring to the first document.

Maryland law permits incorporation by reference in the Code of Maryland Regulations and the *Maryland Register*. §7-207 of the State Government ("SG") Article, Maryland Code.[1] A document incorporated by reference, although not reprinted in COMAR, fully becomes a part of COMAR and is treated as a State publication. In addition, the State Publications and Depository Program requires agencies to transmit copies of State publications to the State's depository libraries. §23-2A-01 of the Education Article, Maryland Code. Consequently, an agency must make about twenty copies of the incorporated document for deposit.

For the reasons stated below, we conclude that the doctrine of fair use permits State agencies to incorporate copyrighted materials by reference, even without the consent of the copyright holder, into the Code of Maryland Regulations. Furthermore, State agencies may

---

[1] Some examples of the more than 200 documents that have been incorporated by reference in COMAR include the National Electrical Code (1990), at COMAR 05.02.01.03A(3); the Forest Conservation Manual (1991), at COMAR 08.19.01.03B(20); and the Forensic Chemists and Analysts Training Manual (1992), at COMAR 10.10.03.06.

copy the incorporated-by-reference document to satisfy the Division of State Documents' requirement that a copy of each incorporated-by-reference document be placed in each public depository. State agencies should place a notice in each of these copies, however, reminding members of the public of the copyrighted status of the incorporated-by-reference document.

# I

## The Fair Use Defense

### *A.    Introduction*

"In order to Promote the Progress of Science and useful Arts," the United States Constitution authorizes Congress to secure "to Authors and Inventors the exclusive right to their respective Writings and Discoveries." Article I, §8. To that end, Congress has conferred an exclusive bundle of rights on copyright owners. 17 U.S.C. §101 *et seq.* Works eligible for copyright protection are those "original works of authorship fixed in any tangible medium of expression." 17 U.S.C. §102.

The exclusive rights − to copy, publish, distribute, and make derivative copies − belong to the copyright owner. 17 U.S.C. §106. These rights are subject to certain exceptions, however, the chief one being that the infringer may assert that its use of the copyrighted materials was a "fair use." 17 U.S.C. §107. This fair use defense permits unauthorized copying when certain conditions are met.

Fair use is traditionally defined as a privilege in a person other than the copyright owner to use the copyrighted material in a reasonable manner without consent. *Harper & Row Publishers v. Nation Enterprises*, 471 U.S. 539 (1985). Section 107 of the Copyright Act, 17 U.S.C. §107, reflects Congress' intent to codify the common law privilege of authors to make fair use of an earlier writer's work. *Campbell v. Acuff-Rose Music Inc.*, 114 S. Ct. 1164 (1994); *Harper & Row*, 471 U.S. at 547. As codified, the fair use defense requires examination of four non-exclusive factors:

> In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include −

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. §107.

### B.    *Fair Use Doctrine Applied*

The fair use defense was successful in a federal district court when a county and its sheriff incorporated a copyrighted map into a county map without the copyright owner's authorization. *Key Maps, Inc. v. Pruitt*, 470 F. Supp. 33 (S.D. Tex. 1978). The plaintiff, Key Maps, developed and copyrighted a Houston map. Harris County, through its fire marshal, Pruitt, and Key Maps agreed to collaborate on a fire zone map. A county engineer would draw county fire zones on the copyrighted map, and Key Maps would print it. The county delivered the fire zone map to Key Maps for printing, but Key Maps delayed and never printed the order. Later, Pruitt retrieved the fire zone map from Key Maps and had another firm print the maps. Key Maps sued for infringement of its Houston map.

The court opined that whether a specific use of a copyright-claimed map "is 'fair' or constitutes an infringement is particularly adaptable to the concept of 'fair use.'" 470 F. Supp. at 37. The court viewed §107 as showing Congress's "obvious inten[t] to limit the exclusive right of a copyright owner where circumstances require it." *Id*. The court concluded that the government defendants had a privilege to use the copyrighted map in a reasonable manner without the owner's consent. 470 F. Supp. at 38. The court held that the purpose of the use — the coordination of fire prevention activities — was legitimate, fair, and reasonable. *Id*.

Applying the fair use defense, as in *Key Maps*, we also conclude that the incorporation by reference of copyrighted works

into the Code of Maryland regulations is a fair use. We consider each of the factors identified in §107.

### 1. *Purpose of the Use*.

The purpose of the incorporation-by-reference doctrine is to further the public welfare, because the work to be incorporated sets forth standards, guidelines, or requirements that State officials have determined are necessary to impose on regulated parties. Although this purpose may not make the use presumptively fair, *Campbell v. Acuff-Rose Music*, 114 S.Ct. at 1174, this purpose does reflect the good faith that is central to fair use analysis. *Harper & Row,* 471 U.S. at 562.

This conclusion is bolstered by a case involving the constitutionality of the statutory requirement that a copyright holder deposit two copies of its publication with the Library of Congress. *Ladd v. Law & Technology Press*, 762 F.2d 809 (9th Cir. 1985). A company that had failed to do so and was penalized for the lapse argued that the requirement was an unconstitutional taking of its property. The federal appellate court distinguished a line of early Supreme Court cases that held governmental use of patented inventions to be unconstitutional takings without just compensation. In those cases, the court noted, the government was not acting as a sovereign when it appropriated the patented devices for proprietary purposes. 762 F.2d at 815. By contrast, the deposit requirement was found to serve a sovereign purpose. The requirement furthers the public welfare by promoting arts and sciences through additions to the national library collection. *Id.* Similarly, COMAR incorporation-by-reference serves a sovereign, and not a proprietary, purpose.

### 2. *Nature of the Copyrighted Work*.

The law recognizes a greater need to permit the fair use defense with respect to factual works than to works of fiction or fantasy. *Harper & Row*, 471 U.S at 563. *See also Stewart v. Abend*, 495 U.S. 207, 237-38 (1990) (contrasting fictional short story with factual works); *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 455 n. 40 (1984) (contrasting motion pictures with news broadcasts). *See also Campbell v. Acuff-Rose Music*, 114 S.Ct. at 1175 (Roy Orbison's rock-and-roll song "Oh Pretty Woman" "fall[s] within the core of the copyright's protective purposes"). *Cf. Feist Publications v. Rural Telephone Service, Inc.*, 499 U.S. 340

(1991) (bare factual compilations, assembled without creativity, not entitled to copyright protection).

The works incorporated by reference into COMAR are factual standards and compilations and do not fall within the core of the copyright-protected zone.

### 3.    *Amount and Substantiality of Portion Used.*

The extent of permissible copying varies with the purpose and character of the use. *Campbell v. Acuff-Rose Music*, 114 S. Ct. at 1175. Additionally, whether the "heart" or core of the work is copied may be more important than the percentage of the work copied. *Harper & Row*, 471 U.S. at 564-65

The amount and substantiality of the portion of the copyrighted work that is incorporated by reference varies. A small portion of a document, or the work in its entirety, may be incorporated.

### 4.    *Effect on the Market.*

This factor requires evaluation whether "'unrestricted and widespread conduct of the sort engaged in by the [infringer] ... would result in a substantially adverse impact on the potential market' for the original." *Campbell v. Acuff-Rose Music*, 114 S. Ct. at 1177 (quoting 3 M. Nimmer & D. Nimmer, *Nimmer on Copyright* §13.05[A][4] (1993)). A duplication of an original that "serves as a market replacement for it" makes it "likely that cognizable market harm to the original will occur." *Id*.

Incorporating a document by reference into the Code of Maryland regulations would not appear to have a substantially adverse market impact. The document is not actually reprinted in or distributed with COMAR; instead, a copy of the incorporated-by-reference document is placed in each of the fifteen or so public depository libraries. *If* the incorporation by reference coupled with act of deposit opened the deposited copies to further unrestricted copying, the market impact might well be severe. But, as explained in Part III below, we do not believe that incorporation by reference substantially erodes the property value of the copyright.

## C.    *Conclusion*

In our view, a reasonable weighing of these factors leads to the conclusion that the State may incorporate by reference without the copyright owner's consent.  The purpose of the sovereign use, the regulatory nature of the copyrighted works, and the limited market impact far outweigh the factors that may militate against fair use.

## II

## Public Domain Doctrine

A long line of cases has consistently held that statutes and judicial opinions are in the public domain and cannot be copyrighted.  *Banks v. Manchester*, 128 U.S. 244 (1888); *Wheaton v. Peters,* 33 U.S. 591 (1834).  Copying of statutes and judicial opinions is freely permitted and does not constitute an infringement.  "The question is whether this principle likewise covers state-promulgated administrative regulations which are modeled on a privately-developed code."  *Building Officials & Code Admin. v. Code Technology, Inc.,* 628 F.2d 730 (1st Cir. 1980) (cited hereafter as "*BOCA*").

In this case, the developer of a building code, BOCA, licensed the Commonwealth of Massachusetts to incorporate its code standards into the official Massachusetts building code.  BOCA published and distributed this official Massachusetts building code on behalf of the Commonwealth.  The defendant published its own edition of the official code.  When BOCA sued for infringement, the federal district court granted BOCA a preliminary injunction.  The First Circuit reversed, holding that the probability of success on the merits did not justify an injunction.  628 F.2d at 732.

The appellate court reiterated the "clear" law that "judicial opinions and statutes are in the public domain and are not subject to copyright." 628 F.2d at 734.  This doctrine has two bases:  (1) Due process requires the public to have notice of what the law is in order to obey it and avoid its sanctions; and  (2) The public has a property interest in the work of its legislators and judges.  *Id*.  Consequently, the court said, the "dispositive question" was whether inclusion of the BOCA-created materials in the official Massachusetts code had the effect of rendering the BOCA materials − like the rest of the building code − in the public domain and thus freely available for copying.  626 F.2d at 732.  In reversing the preliminary injunction,

the appellate court expressed "serious doubts as to BOCA's ability to prevail." 628 F.2d at 736. The court did hold, however, that BOCA could try to prove at trial that the public domain theory did not apply to technical regulations drafted by private persons. 628 F.2d at 736.

Although *BOCA* suggests that a copyright owner may no longer have an enforceable copyright if the state has incorporated by reference the copyrighted materials − that is, the incorporation causes the previously-protected material to fall into the public domain − the court recognized the issue as not only one of first impression but "of importance in view of a possible trend towards incorporation by reference or otherwise, of model codes." 628 F.2d at 736. The issue whether the state's unauthorized incorporation by reference is itself permissible was not raised in *BOCA* because there the copyright owner had licensed Massachusetts to copy the BOCA code.

In another infringement suit, a federal district court held that the infringer could not defend under the theory that the copyright owner's roadway mileage charts had fallen into the public domain. *Rand McNally & Co. v. Fleet Mgmt. Systems, Inc.*, 591 F. Supp. 726 (N.D. Ill. 1983). At issue were Interstate Commerce Commission regulations that require common carriers to file tariffs and specify that if the tariff is computed based on distance, "only distance guides officially on file with the Commission may be referred to." 591 F. Supp. at 734 (quoting 49 C.F.R. §1310.16(e)). The defendant argued that the ICC regulations imbued the mileage chart with the force of law and that the chart, therefore, was in the public domain and ineligible for copyright protection, as if it were a statute or judicial opinion.

The court saw "no reason to extend this [public domain] body of law to a privately published distance guide that is used as a tariff reference publication." 591 F. Supp. at 736. The court noted that, unlike the *BOCA* case, the government had not incorporated by reference Rand McNally's mileage guide; the guide had simply been placed on file. The ICC regulations left it to private choice as to what type, if any, distance information should be on file. *Id*. Accordingly, the due process basis for the public domain theory − that the public must have notice of the law and its sanctions − was not implicated. Further, the court also did not find implicated the public property interest basis, because Rand McNally's mileage guide was privately authored and published. The court concluded

that the mileage guide was thus not the equivalent of a statute or judicial opinion for purpose of copyrightability. *Id.*

Because the ICC had not incorporated by reference the mileage guide, the court did not rule on the issue whether such government use would be a copyright infringement. In relevant dicta, however, the court noted, that "while a state actor may be able to ... move otherwise copyrightable material into the public domain, *see [BOCA]*, it is questionable whether a private person may do so." 591 F. Supp. at 736 n. 9.

The common factor in these cases is the courts' implied acceptance that states may incorporate by reference copyrighted materials. The problem for copyright owners is whether the copyrighted material thereby enters the public domain. We are cognizant that if incorporation by reference of copyrighted material into a regulatory code automatically caused the material to fall into the public domain − thus stripping the copyright owner of its exclusive right to copy, publish, distribute, and make derivative copies − the government's action could be construed to go beyond the concept of "use," fair or otherwise, and could be a "taking." *See* Roberta Rosenthal Kwall, *Governmental Use of Copyrighted Property: The Sovereign's Prerogative*, 67 Tex. L. Rev. 685 (1989).

We do not believe, however, that the action of State agencies in incorporating copyrighted materials into the Code of Maryland Regulations causes those documents to fall into the public domain. The public domain doctrine, which indisputedly applies to judicial opinions and statutes, has as its basis the dual notions that "[d]ue process requires people to have notice of what the law requires of them" and that "citizens are the authors of the law, and therefore its owners, regardless of who actually drafts the provisions ...." *BOCA*, 628 F.2d at 734. Neither notion underlying the principle that statutes and judicial opinions are in the public domain is implicated here. Certainly, members of the public have a due process right to notice of the regulatory code so they may comply and know the sanctions for noncompliance. But the public's due process right to have notice of the code regulating its behavior is satisfied because the incorporated-by-reference material is available at each public depository library. Furthermore, the "citizen-as-author" principle is simply inapt, because neither legislators nor judges nor State employees drafted the materials. We do suggest, however, that State agencies place a prominent notice, perhaps on the cover, of each deposited copy of a copyrighted work, stating that the material is copyrighted and is not in the public domain.

## III

## Conclusion

In summary, it is our opinion that:

1.     The State's incorporation-by-reference of copyrighted standards and guidelines into a regulatory code is a fair use.

2.     State agencies' copying of the copyrighted materials for deposit in the public depository libraries is also a fair use.

3.     The incorporation-by-reference guidelines should require State agencies to display a prominent notice on each deposited copy stating that the material is copyrighted and is not in the public domain.

                                          J. Joseph Curran, Jr.
                                          *Attorney General*

                                          Sheila McDonald Gill
                                          *Assistant Attorney General*

Jack Schwartz
*Chief Counsel*
  *Opinions & Advice*